UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
AT ASHLAND
CIVIL ACTION NO. 16-50-HRW

MICHAEL PADGETT                                                                PLAINTIFF

V.

OFFICER NATHAN GOFF, et al.                                           DEFENDANTS

REPORT AND RECOMMENDATION

Pending is a motion for summary judgment filed by defendants Nathan Goff and Paul Webb. Doc 23. After examining the record and applicable law, the Court recommends that the motion be granted.

**I. Relevant Factual and Procedural History**

Plaintiff, an inmate at the Eastern Kentucky Correctional Complex, signed his verified complaint in January 2016, and it was received and filed by the Clerk of Court in February 2016. Doc. 1. The complaint originally named four defendants, each of whom works for the Kentucky Department of Corrections: Roy Terry, Kathy Litteral, Nathan Goff and Paul Webb. In April 2016, the presiding district judge dismissed the claims against Terry and Litteral (doc. 10), so this report and recommendation will discuss only the facts and allegations pertaining to the excessive force claims against Goff and Webb (hereafter collectively referred to as "defendants").

According to the complaint, "[o]n Sunday January 24th [,]2016 at around 9:00 p.m. i [sic] Michael Padgett was physically assaulted while handcuffed behind my back and Being Escorted [by defendants] From Dorm 7 to Dorm 5 (segg) [sic]. For making threatening statements. [sic]" Doc. 1 at 2. Somewhat more specifically, plaintiff alleges that defendants slammed him "face first into the concrete[,]" and punched him in the face. *Id.* Plaintiff alleges defendants' actions

1

caused "sever" [sic] damage" which necessitated his receiving stitches, having his right eye swollen shut and having a "slight concussion . . . ." *Id.* at 2-3.  The terse complaint, which was completed by filling out blanks on a form, contains no additional relevant factual statements.

However, the complaint does discuss plaintiff's usage of the prison grievance system. Plaintiff checked a box indicating he filed a grievance and sought an informal resolution and appealed that decision to the warden, but did not check a box indicating that he filed a subsequent appeal to the Commissioner of the Department of Corrections ("the Commissioner"). Doc. 1 at 5.  When he filled in a space asking for the results of his grievance(s), plaintiff wrote: "I filed the Greivance [sic] because i [sic] was Assaulted By Deputys [sic]. . . [ellipsis original] Sarah Potter sent the Greivance [sic] back saying it wasn't Greivable [sic] because i [sic] received a write up . . . [ellipsis original] So my Administrative remedies are done."[1]  *Id.*

Confusingly, since he was a state prisoner, plaintiff also filled in blanks on the next page of his complaint reserved for discussing grievances filed by county or city prisoners. *Id.* at 6.  In that section, plaintiff stated that he "wrote what happened in Detail, wrote the warden and Deputy warden as well as Atternal [sic] Affairs." *Id.*  In the section asking for the results of any grievances, plaintiff again wrote that "Sarah Potter stated my grevance [sic] wasn't a greivable [sic] issue cause i [sic] received a write up." *Id.*  However, seemingly contradictorily to what he wrote on the previous page, plaintiff then checked a box indicating that he did file an appeal but some unnamed person "[f]ailed to respond back to me in the Timely matter." *Id.*  Plaintiff then checked a box indicating that he did not take any further steps because none were available. *Id.* Thus, though some specifics, such as whether/when plaintiff sought relief from the warden are unclear, it is clear that plaintiff never sought relief from the Commissioner.

---

[1] Potter was a grievance coordinator, not the warden.

2

The end of plaintiff's complaint contains a certification stating that "[p]ursuant to 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true and correct." *Id.* at 8. Though not addressed by defendants in their motion, the verified nature of the complaint means that it is, functionally, an affidavit. *See, e.g., El Bey v. Roop*, 530 F.3d 407, 414 (6th Cir. 2008) ("But this view of the record fails to account for the fact that El Bey signed his complaint under penalty of perjury pursuant to 28 U.S.C. § 1746. His verified complaint therefore carries the same weight as would an affidavit for the purposes of summary judgment.").

Defendants filed an answer in May 2016 raising affirmative defenses such as qualified immunity and failure to exhaust administrative remedies. Doc. 14 at 3. Defendants also denied using excessive force against plaintiff, including hitting, punching or kneeing him "at any time." *Id.* at 2. The presiding judge then referred the matter to a magistrate judge (doc. 15) and, shortly thereafter, the undersigned magistrate judge was assigned to the case (doc. 16) and quickly issued an order providing the parties with six months to conduct discovery (i.e., until November 10, 2016). Doc. 17.

About a week after the scheduling order was issued, plaintiff sent a letter to the Court asking it to subpoena all documentation of his injuries, including video footage of the underlying incidents. Doc. 18. The Court leniently construed the letter as a discovery request directed to defendants, and explained to plaintiff that the Court is not a party to discovery so any discovery requests must be sent directly to defendants. Doc. 19. The Court required defendants to respond to the construed discovery request within two weeks. *Id.* No party subsequently sought relief from the Court for *any* discovery issues, including that construed discovery request. Indeed, other than plaintiff's motion to be transferred to a different correctional facility (doc. 20) (which the Court denied—*see* doc. 21), *nothing* was filed by any party until November 2016,

when defendants filed a status report near the close of discovery, which surprisingly provided that neither party had undertaken *any* discovery after defendants' responded to the aforementioned construed discovery request.[2]  Doc. 22.  Thus, there are no depositions, interrogatory responses or responses to requests for production of documents in the sparse record. Plaintiff did not file a status report or otherwise ask the Court for relief after his transfer request was denied.

In December 2016, defendants filed the pending motion for summary judgment, arguing primarily that:  a) they are entitled to qualified immunity and b) plaintiff has failed to exhaust his administrative remedies.  Doc. 23.  After being granted an extension of time to do so, plaintiff filed a response to the motion for summary judgment (doc. 27) and defendants thereafter filed their reply.  Doc. 28.  The motion is thus ripe for adjudication.[3]

## II. Analysis

### A. Standards of Review

Summary judgment is proper only if the facts on file with the court demonstrate that there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party may discharge its burden by "pointing out . . . an absence of evidence to support the nonmoving party's case."  *Celotex Corp. v. Catrett*, 477

---

[2] Defendants' response to that construed discovery request is not in the record.  However, it is reasonable to presume that they did not provide plaintiff with any video footage as they assert in their reply brief that "these defendants have no access to security video or pictures on the Kentucky Offender Management System (KOMS)." Doc. 28 at 1.  Regardless, plaintiff did not seek any further relief by, for example, filing a motion to compel the production of the tapes.  There also is no indication that plaintiff attempted to subpoena the tapes from other correctional officials who may have had custody of them. Thus, though plaintiff bemoans the lack of video footage in the record, that void is attributable to his own inaction.  The issue of whether the video tapes exist, were properly discoverable and, if so, from whom was never properly before the Court.  The Court cannot at this late date, and on its own motion, order the record to be supplemented with any available tapes.

[3] Plaintiff later filed an unauthorized sur-reply (doc. 29), which is being stricken via separate order.

U.S. 317, 325 (1986). The nonmoving party cannot rest on its pleadings, but must identify specific facts that remain in dispute for the finder of fact at trial. *See id.* at 324. Although all inferences are drawn in favor of the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986), the nonmoving party must present significant and probative evidence in support of its complaint. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). "Conclusory assertions, supported only by Plaintiff's own opinions, cannot withstand a motion for summary judgment." *Arendale v. City of Memphis*, 519 F.3d 587, 605 (6th Cir. 2008).

The court's function is not to weigh the evidence and determine the truth of the matters asserted, but to determine whether a genuine issue of material fact remains for a fact finder at trial. *Anderson*, 477 U.S. at 249. The key inquiry is whether the evidence presents a "sufficient disagreement to require submission [of the case] to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52. The court reviewing a summary judgment motion need not search the record in an effort to establish the lack of genuinely disputed material facts. *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 404 (6th Cir. 1992). Rather, the burden is on the nonmoving party to present affirmative evidence to defeat a properly supported motion, *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989), and to designate specific facts that are in dispute. *Anderson*, 477 U.S. at 250; *Guarino*, 980 F.2d at 404-05. Again, plaintiff's verified complaint serves as a *de facto* affidavit for purposes of ruling on defendants' motion for summary judgment. *El Bey*, 530 F.3d at 414.

### B. Exhaustion of Administrative Remedies

Defendants' primary assertion in their motion is that they are entitled to qualified immunity. "Qualified immunity protects public officials from liability for civil damages if their

conduct does not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Martin v. City of Broadview Heights*, 712 F.3d 951, 957 (6th Cir.2013) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). However, accepting plaintiff's verified complaint as an affidavit, the parties have completely divergent views on material facts such that the Court likely could not conclude that defendants are entitled to qualified immunity.

For example, plaintiff contends he was slammed face first into the concrete by defendants and then punched in the face (doc. 1 at 2); defendants deny any assault on plaintiff. Doc. 23 at 6.[4] Defendants do not deny that plaintiff hit his head on the concrete during his cell transfer; however, defendants insist that plaintiff's "injuries were caused primarily from his self-administered head bashing of the shower door when he was being cleaned up." Doc. 28 at 6. Officers unnecessarily and intentionally slamming a handcuffed prisoner onto concrete and thereafter punching him in the face could, for purposes of argument, constitute excessive force sufficient to deny qualified immunity; on the other hand, a handcuffed prisoner falling due to having lunged forward in an effort to frustrate officers and/or escape, and then exacerbating otherwise minor injuries by bashing his head against a shower/wall would, in theory, present a scenario in which a court could conclude that the officers were entitled to qualified immunity.[5]

---

4 In his affidavit, defendant Webb asserts that neither he nor defendant Goff "used excessive force in our attempt at escorting Inmate Padgett from Dorm 5 to Dorm 7 on January 24, 2016." Doc. 23-4 at 2. The question of whether defendants are entitled to qualified immunity is intertwined with the question of whether they used excessive force, the resolution of which involves legal determinations based upon the relevant facts—which are greatly disputed.

In other words, defendant Webb's statement that neither defendant engaged in excessive force is more of a legal conclusion than a factual statement. "It is well settled that courts should disregard conclusions of law (or 'ultimate fact') found in affidavits submitted for summary judgment." *Harrah's Entertainment, Inc. v. Ace American Ins. Co.*, 100 Fed. App'x 387, 394 (6th Cir. 2004) (internal quotation marks omitted). Thus, Webb's self-serving assertion is likely inadmissible, and certainly not determinative. However, the Court need not definitively take any corrective action regarding the affidavit since the motion may be resolved on other grounds.

5 Defendants stress that the injuries plaintiff alleges in his complaint are grossly inflated. However, defendants could, in theory, have used excessive force AND plaintiff could have thereafter exacerbated or inflated his injuries.

On first blush, therefore, there are genuine disputes as to material facts which foreclose defendants' being entitled to summary judgment on their qualified immunity claim.[6] The Court need not definitively opine on whether defendants are entitled to qualified immunity, however, because plaintiff failed to exhaust his administrative remedies.

42 U.S.C. §1997e(a), the Prison Litigation Reform Act ("PLRA"), provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Exhaustion is absolutely mandatory: an inmate "may not bring any action . . . absent exhaustion of available administrative remedies." *Ross v. Blake*, 136 S.Ct. 1850, 1856 (2016). There is no "special circumstances" exception to the exhaustion requirement. *Id.* at 1855. Thus, prisoners "must now exhaust *all* 'available' remedies, not just those that meet federal standards . . . even where the relief sought . . . cannot be granted by the administrative process." *Woodford v. Ngo*, 548 U.S. 81, 85 (2006) (emphasis added). "In a claim by a prisoner, failure to exhaust administrative remedies under the PLRA is an affirmative defense that must be established by the defendants. Because the defendants moved for summary judgment on this defense, it was their burden to show that there was an absence of evidence to support the nonmoving party's case." *Napier v. Laurel County, Ky.*, 636 F.3d 218, 225 (6th Cir. 2011) (citations omitted).

The only "significant qualifier" in the otherwise mandatory nature of exhaustion is that "the remedies must indeed be 'available' to the prisoner . . . . An inmate, that is, must exhaust

---

Regardless, plaintiff's failure to exhaust his administrative remedies means the Court need not opine on the exact extent of plaintiff's injuries and/or how they occurred.

6 Perhaps discovery, such as deposing the parties and any relevant witnesses and placing any video footage of the underlying incidents into the record, would have resolved the factual disputes.

available remedies, but need not exhaust unavailable ones." *Ross*, 136 S.Ct. at 1850, 1858. Turning to various dictionaries, the Supreme Court has defined "available" as meaning "capable of use for the accomplishment of a purpose and that which is accessible or may be obtained . . . ." *Id.* at 1850 (quotation marks and citations omitted). Therefore, "an inmate is required to exhaust those, but only those, grievance procedures that are capable of use to obtain some relief for the action complained of." *Id.* at 1859. Or, in other words, "an inmate cannot be required to exhaust administrative remedies regarding non-grievable issues." *Brock-Butler v. Parker*, 2016 WL 3676769, at *3 (W.D. Ky. July 6, 2016).

Though not really discussed by the parties, the core question before the Court is whether plaintiff had available administrative remedies in light of Potter's memorandum. To resolve that issue, the Court will need to examine both the actions plaintiff took/failed to take within the prison grievance system, as well as the overall structure of the grievance process for Kentucky state prisoners.[7]

Neither party attached the Kentucky inmate grievance policies and procedures to their briefs. Instead, defendants provided a link to a website displaying the current version of CPP 14.6, governing inmate grievances. Doc. 23 at 8, n.1. However, the policy shown at that link

---

7 Defendants also argue that plaintiff failed to exhaust his administrative remedies regarding the sanctions imposed against him for his role in the events which gave rise to this action because "[t]he final step in an administrative appeal in a disciplinary hearing is an appeal to the Commissioner of the Kentucky Department of Corrections (CPP15.6)." Doc. 23 at 7-8. To support their argument, defendants provide a link to a website which displays a version of Kentucky Corrections Policies and Procedures ("CPP") 15.6 that did not take effect until July 8, 2016. *See* http://corrections.ky.gov/communityinfo/Policies%20and%20Procedures/Documents/CH15/CPP%2015-6%20eff%2007-08-16.pdf (last visited July 20, 2017).

      Regardless, Section (II)(F)(7) of the version of CPP 15.6 which appears at the link provided by defendants explicitly provides that "[a]n appeal may not be taken beyond the Warden." The Court thus is puzzled by defendants' adamant contention that plaintiff was required to appeal the warden's decision to the Commissioner. Regardless, the question before the Court is whether plaintiff exhausted his administrative remedies regarding the grievance(s) he filed *pertaining to defendant's alleged misconduct*, not whether he exhausted his remedies regarding any penalties he may have incurred for his own misconduct. In short, the Court deems it largely irrelevant whether plaintiff exhausted his administrative remedies regarding his own sanctions.

8

became effective on August 5, 2016, over six months after the events which gave rise to this action.[8] The question is whether plaintiff properly exhausted his administrative remedies as they were contemporaneously available, meaning that an after-enacted policy is inapplicable. Independently, the Court located a link to the policy which became effective on August 1, 2014,[9] but did not locate any policies between the 2014 and 2016 versions. In any event, though close scrutiny could perhaps reveal minor discrepancies between them, both versions of CPP 14.6 contain the same fundamental four-step grievance process.

CPP 14.6(II)(B) provides that a grievable issue "shall include any aspect of an inmate's life in prison that is not specifically identified as a non-grievable issue. A grievable issue may include, but is not limited to . . . . [p]ersonal action by staff . . . ." CPP 14.6(II)(C) lists non-grievable issues, including "[d]isciplinary procedures . . . ." The grievance process under CPP involves four steps. First, 14.6(II)(J)(1) requires an inmate to file a grievance within five business days after a specific event occurs, after which attempts to solve the problem will be made informally. Second, if the grievant is not satisfied with the outcome at that informal resolution step, the inmate may ask for the Grievance Committee to hold a hearing. CPP 14.6(II)(J)(2). Third, if the inmate is dissatisfied with the Committee's recommended solution, he may appeal to the warden. CPP 14.6(II)(J)(3). Finally, if an inmate is dissatisfied with the warden's decision, he may then appeal to the Commissioner  CPP 14.6(II)(J)(4).

With that four-step process in mind, the Court now examines what grievance procedures plaintiff utilized. Plaintiff signed a grievance on January 28, 2016 stating that he was assaulted

---

[8] http://corrections.ky.gov/communityinfo/Policies%20and%20Procedures/Documents/CH14/CPP%2014-6%20Grievances%20-%20Eff%208-5-16.pdf (last visited July 20, 2017).

[9] http://corrections.ky.gov/communityinfo/Policies%20and%20Procedures/Documents/CH14/CPP%2014-6%20Effective%208-1-14.pdf  (last visited July 20, 2017).

9

on January 24, 2016 by unnamed "deputys [sic] . . . ." Doc. 1-2 at 2. The portion of the form showing the results of the informal resolution stage is blank, but plaintiff signed and checked a box on January 30, 2016 stating he was not satisfied with the informal resolution. *Id.* The only other documentation of plaintiff's grievances in the record is a memorandum to him from Sarah Potter, stating that his grievance was returned because:

> According to CPP 14.6 disciplinary reports are non-grievable issues. Because you received a disciplinary write up I cannot process this grievance. You can however file an appeal to the Warden and address any issues in your appeal to her. You should be able to fill out a records request for the documents you are requesting in your grievance.

*Id.* at 1. That memorandum says that it is a "2nd notice" though the first notice is not in the record. Curiously, the memorandum from Potter to plaintiff is dated January 26, 2016—two days before the date plaintiff signed the grievance and four days before he stated that he was not satisfied with the results of the informal resolution stage. That date discrepancy is not addressed by the parties.

Though the limited record before the Court could raise questions about what date plaintiff filed his grievance (or whether he perhaps filed more than one grievance based upon the same underlying facts) nonetheless there can be no reasonable dispute that plaintiff failed to complete all four steps of the grievance process. At absolute most, plaintiff complied with the first three steps, up to and including seeking review by the warden.[10] As the Sixth Circuit has clearly held,

---

[10] The record does not contain any appeal plaintiff lodged with the warden, though plaintiff alleges in his complaint that he "wrote the warden and deputy warden" but the warden "[f]ailed to respond back to me in a timely manner." Doc. 1 at 6. However, the warden has fifteen business days to respond to a grievance which is appealed to him/her (CPP 14.6(II)(J)(3)) and plaintiff signed his §1983 complaint only three days after Potter wrote her January 26, 2016 memorandum. In fact, plaintiff signed his §1983 complaint one day before he signed the portion of the grievance denoting that he was not happy with the results of the informal resolution stage. Therefore, plaintiff plainly did not give the warden ample time to respond, even assuming leniently that plaintiff sought relief from the warden. Finally, CPP 14.6(II)(J)(5) provides in relevant part that if a response is not made to a grievance in a timely manner, a prisoner "has the option of agreeing to a requested extension of the time limit or having the grievance forwarded without action to the next level of review." Thus, even if, somehow, the warden failed to respond to plaintiff in a

"[w]hen a prisoner fails to exhaust administrative remedies before filing a civil rights complaint in federal court, or only partially exhausts administrative remedies, dismissal of the complaint is appropriate." *Smith v. Federal Bureau of Prisons*, 300 F.3d 721, 723 (6th Cir. 2002). By failing to appeal to the Commissioner, plaintiff has plainly failed to complete all of the four-step grievance process, meaning he has not exhausted his administrative remedies. *See, e.g., Kiskaden v. Rees*, 2006 WL 3323870, at *3 (E.D.Ky. Nov. 14, 2006) (dismissing a §1983 action because plaintiff failed to appeal the warden's decision to the Commissioner).

Normally, the Court would end its analysis at this point with a recommendation that defendants be granted summary judgment. However, Potter opined that the issues plaintiff raised were non-grievable and "an inmate cannot be required to exhaust administrative remedies regarding non-grievable issues." *Brock-Butler*, 2016 WL 3676769, at *3. Thus, the Court will discuss whether plaintiff actually had *available* administrative remedies.

Plaintiff's theory seems to be that he was not required to complete the four-step grievance process because Potter told him his issues were not grievable. Though pro se plaintiff's blind acceptance of Potter's conclusion is perhaps understandable, it is not correct.

Nothing in plaintiff's grievance facially pertains to his disputing any discipline imposed against him; instead, he sought to have defendants sanctioned for their alleged misconduct. It is entirely plausible that both plaintiffs and defendants could, solely for purposes of argument, have engaged in behavior that would warrant the imposition of sanctions. For example, plaintiff could have been verbally abusive or disrespectful to defendants, and in response defendants could have been physically abusive to plaintiff. In such a hypothetical scenario, both plaintiff and

---

timely manner the proper action by plaintiff would have been to forward the matter to the Commissioner—which he did not do.

defendants would have been potentially subject to disciplinary measures, and CPP 14.6(II)(B)(4) clearly states that complaints of "[p]ersonal action by staff" are grievable. Consequently, Potter was mistaken when she told plaintiff that he was raising non-grievable issues simply because he also happened to be sanctioned as a result of his role in the events. That error, however, did not excuse plaintiff's failure to complete the four-step grievance process.

This is not the first case in which a plaintiff has attempted to evade the exhaustion requirement by arguing that they were attempting to raise non-grievable disciplinary issues. For example, in *Brock v. Martin*, a plaintiff argued that he did not have to exhaust his administrative remedies prior to filing a §1983 action "because his complaint involves non-grievable 'disciplinary procedures' under CPP §14.6(II)(C)(4)." 2016 WL 676466, at *2 (W.D.Ky. Feb. 18, 2016). The court forcefully rejected that argument as follows:

> The Court disagrees. "Disciplinary proceedings are non-grievable because they 'have their own appellate process that inmates must follow.' " *Browder v. Parker*, No. 5:11-CV-29-GNS, 2015 WL 4555167, at *2 (W.D. Ky. July 28, 2015) (quoting *Brewer v. Corr. Corp. of Am.*, No. 7:09-CV-89-KKC, 2010 WL 398979, at *2 (E.D. Ky. Jan. 27, 2010)). *Accordingly, an issue is non-grievable under CPP § 14.6(II)(C)(4) only where it is the result of a formal disciplinary action.*
>
> None of Brock's remaining federal claims fall within that category. For example, Brock says that the officers used excessive force, placed him in a restraint chair, and confined him in an unpleasant manner. *Yet, Brock points to nothing in the record to show that those acts happened as a result of a formal disciplinary action against him.* The same is true of Brock's retaliation claim. While Brock alleges that he suffered a variety of retaliatory acts for filing this and other lawsuits, none were formal disciplinary actions.
>
> Rather, it is fairer to say that, *under CPP § 14.6(II)(B), each complained-of issue was grievable.* Accordingly, CPP § 14.6(II)(J) required Brock to file a written grievance. Yet, Grievance Coordinator Daniel Smith has provided a sworn affidavit, attaching to it all grievances that Brock filed between February 1 and March 31, 2015. None of those grievances relate to the subject-matter of this action. Brock has not introduced any evidence to the contrary. There is no genuine dispute of material fact, then, that Brock has not exhausted all administrative remedies as 42 U.S.C. § 1997e(a) requires. Therefore, the Court will dismiss Brock's remaining federal claims without prejudice.

*Id.* at *2-3 (emphasis added) (citations omitted). *See also Brock-Butler*, 2016 WL 3676769, at *3-4 ("Though Brock-Butler argues that he need not exhaust his administrative remedies because his complaint involves non-grievable 'disciplinary procedures' under CPP § 14.6(II)(C)(4), the Court disagrees . . . . None of Brock-Butler's federal claims fall within that category. For example, *Brock-Butler says that the officers used excessive force. Yet, Brock-Butler points to nothing in the record to show that those acts happened as a result of a formal disciplinary action against him.* The same holds true for Brock-Butler's free-exercise claim too. While Brock-Butler alleges that he suffered a variety of unpleasant acts, none were formal disciplinary actions. There is no genuine dispute of material fact, then, that Brock-Butler has not exhausted all of his available administrative remedies as 42 U.S.C. § 1997e(a) requires. Therefore, the Court will dismiss Brock-Butler's remaining federal claims without prejudice.") (emphasis added) (citations and paragraph breaks omitted). Similarly, since none of the issues raised in plaintiff's grievance happened as a result of formal disciplinary action against him--Potter's contrary conclusion notwithstanding--the matters were grievable.

In turn, because the matters were grievable, plaintiff was required to complete the four-step grievance process. Indeed, Potter's memorandum invites such an appeal, stating plaintiff "can however file an appeal to the Warden and address any issues in your appeal to her." Doc. 1-2 at 1. In other words, plaintiff plainly had available additional administrative remedies which he did not utilize. Crucially, plaintiff himself knew Potter's decision was wrong. Attached to his complaint is a letter from Plaintiff to Potter dated January 28, 2016, two days after Potter sent her erroneous memorandum, the body of which provides in its entirety:

> I am writeing [sic] to let you know that *I'm Fileing [sic] my Grievance not because of a write up, But Because i [sic] was Physically Assaulted By Deputys [sic]. That is a Grievable issue.* i [sic] am in the Process of Fileing [sic] a 1983

13

>Federal lawsuit.  If You Decide that my Grievance is not Grievable, and send it
>Back again.  [sic]  Then i [sic] have completed the Greivance [sic] Procedure and
>will File my lawsuit with the courts.  Thank you.

Doc. 1-1 (emphasis added).[11]

The purpose of filing an appeal in both the courts and the grievance system is to seek relief from a decision believed to be incorrect.  Plaintiff knew Potter's decision was incorrect.  Potter told plaintiff that he could appeal her decision to the warden.  Nonetheless, plaintiff hastily raced to the courthouse to file this action instead of seeking further administrative relief from the warden and, especially, the commissioner.  Requiring plaintiff to utilize grievance rights that he knew he possessed in order to overturn a decision he knew was wrong is neither unjust nor unduly burdensome.  To the contrary, it is required by the PLRA.

Finally, the Court is cognizant that granting summary judgment to defendants based upon plaintiff's failure to complete the grievance process after being erroneously told his claims were not grievable perhaps may appear harsh.  However, the Court cannot excuse plaintiff's failure to exhaust his administrative remedies on any type of equitable grounds.  Indeed, the Supreme Court forcefully rejected such a "special circumstances" exception to the exhaustion requirement in *Ross*, 136 S.Ct. at 1855. [12]

---

11 Any response from Potter to plaintiff's January 28 letter is not in the record.  However, that is not truly surprising since plaintiff signed his complaint the next day—January 29, 2016.  Doc. 1 at 8.

12 A similar erroneous ruling of non-grievability by prison officials occurred in *Brock v. Wright*, 2017 WL 812467 (W.D. Ky. March 1, 2017).  In that case, a plaintiff brought an excessive force claim against prison personnel, who argued that at least some of the claims were not properly exhausted.  Plaintiff Brock's grievance was rejected because it was "non-grievable due to the fact that you have received a disciplinary report for this issue." *Id.* at *5.  Defendants, unlike the case at hand, conceded that the rejection of plaintiff Brock's grievance was incorrect. *Id.* "Further, since the grievance was rejected, they [defendants] acknowledge that Plaintiff 'did not have the ability to further appeal the grievance and therefore complied with the grievance procedure, on the limited issue of the retaliation claim, to the best of his ability.'" *Id.* That legal conclusion seems to run contrary to *Ross* in that it provides an equitable excuse for failing to exhaust all available administrative remedies.  However, the court in *Brock* resolved the case on other grounds, so the concession by defendants was not dispositive.
   In the case at hand, defendants made no such confession of error regarding Potter's conclusions (though they likely should have).  Regardless, as previously explained, it was incumbent upon plaintiff to appeal Potter's

### III. Recommendation

For the foregoing reasons, defendants' motion for summary judgment (doc. 23) should be **granted**.

Particularized objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service or further appeal is waived. *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005); *Thomas v. Arn*, 728 F.2d 813 (6th Cir. 1984), aff'd, 474 U.S. 140, 155 (1985). A general objection that does not "specify the issues of contention" is not sufficient to satisfy the requirement of a written and specific objection. *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995)(citing *Howard v. Secretary of HHS*, 932 F.2d 505, 508-09 (6th Cir. 1991)).   Poorly drafted objections, general objections, or objections that require a judge's interpretation should be afforded no effect and are insufficient to preserve the right of appeal. *Howard*, 932 F.2d at 509.  A party may respond to another party's objections within fourteen days of being served with a copy of those objections.  Fed. R. Civ. P. 72(b)(2).

This the 24th day of July, 2017



Signed By:
**J. Gregory Wehrman**
United States Magistrate Judge

---

erroneous decision—which she expressly reminded plaintiff he could do.  Simply put, even if defendants had forthrightly acknowledged in this Court that Potter's decision was erroneous, it would not have excused plaintiff's failure to completely exhaust his available administrative remedies.

15